OPINION
{¶ 1} Appellant appeals from a judgment of the Lake County Court of Common Pleas convicting him of two counts of receiving stolen property.
 {¶ 2} On April 21, 2000, appellant was indicted on two counts of receiving stolen property, in violation of R.C. 2913.51, felonies of the fifth degree. One count was for a Citi Bank credit card and the second count was for a Bank One money card. Appellant waived his right to be present at his arraignment and entered pleas of not guilty to the charges contained in the indictment.
 {¶ 3} Prior to trial, the prosecution moved to call John Jeffrey Reed ("Reed") as a court's witness pursuant to Evid.R. 614. Appellant objected; however, the court granted the motion.
 {¶ 4} On April 27, 2001, a jury trial commenced. The prosecution presented the following witnesses: Melody Kay ("Ms. Kay"), Tammy Mapes ("Mapes"), Officer John Edward Tyukody ("Officer Tyukody"), and Officer Ryan Christopher Cueni ("Officer Cueni").
 {¶ 5} Ms. Kay, the victim in this case, attested that, at approximately 10:30 p.m., on December 15, 1999, she drove to her boyfriend's place of employment, Fluid Regulators, which is located at 313 Gillette Street, Painesville, Ohio. She stated that she parked her boyfriend's unlocked car in the parking lot parallel to Fluid Regulators. Ms. Kay left her purse, some Christmas shopping purchases, and a case of Miller Gold beer in the car. She ran into the building to get her boyfriend.
 {¶ 6} Upon returning to the car, approximately five minutes later, Ms. Kay noticed that the case of beer and her purse, containing her Citi Bank credit card, Bank One money card, checkbook, cash, and other items, were missing. She immediately reported the incident to the police.
 {¶ 7} Ms. Mapes, who resides at 349 Walnut Street, Painesville, Ohio, attested that the Fluid Regulators parking lot is observable from her residence. Mapes' home is located on the corner of West Walnut Street and Gillette Street. At approximately 10:15 p.m., on the evening in question, Ms. Mapes heard her dogs barking, looked out the window, and observed three individuals run from the Fluid Regulators parking lot into her yard. She attested that one of the individuals alerted the others that a police vehicle was approaching and the three men fled towards the woods.
 {¶ 8} Officer Tyukody, of the Painesville Police Department, attested that he responded to a call from Dennis Oppenheim, who reported the discovery of a purse, leather jacket, and other miscellaneous items in the construction area of Fluid Regulators. It was later determined that the purse and the contents thereof belonged to Ms. Kay.
 {¶ 9} Reed, who was subpoenaed by the State of Ohio and present in the courthouse, was called as a court's witness. Reed attested that on the evening in question, he had been walking and drinking with appellant and another unidentified individual. Reed testified that he removed a case of beer from an unlocked car parked in the factory parking lot and one of his two companions grabbed the purse. He could not, however, remember who took the purse. Reed recalled that, at some point, the unidentified individual was in possession of the purse. Reed attested he observed a police car and told the others that they should "get out of there."
 {¶ 10} The prosecutor then impeached Reed with prior inconsistent statements made to the magistrate during a juvenile proceeding regarding the events of December 15, 1999. Specifically, the prosecutor asked Reed if he recalled telling the magistrate, "James said hold up a second and we walked [like] by the cars and then [appellant] came running and he had this big pack of beer and like [sic] this purse on top of the beer ***." Reed responded affirmatively. However, when the prosecution asked Reed if appellant had the purse, he responded, " I didn't see him with it, I don't know."
 {¶ 11} Next, Officer Ryan Cueni of the Painesville Police Department attested that: on December 15, 1999, he and Community Service Officer Tuttle responded to a report that individuals were playing in the construction site at Fluid Regulators; as he was driving toward Fluid Regulators he observed three men walking on West Walnut Street; he drove into the Fluid Regulators parking lot and, and finding no one there, concluded that the three men walking on West Walnut Street must have been the men in question; he then returned to West Walnut Street, but the three men were no longer in view; and, he determined that the men must have entered the woods located behind the residential homes from whence he could hear voices.
 {¶ 12} Office Cueni further attested that: upon entering the woods, he heard three individuals talking and laughing and observed appellant and two other individuals drinking beer, approximately six hundred feet from the Fluid Regulators parking lot; the officers identified themselves and told the three individuals to remain where they were, however, appellant's two companions fled; and, after the two men were apprehended, he returned to where he had first discovered them and found that appellant had moved approximately fifteen feet. Officer Cueni stated that he discovered Ms. Kay's Citi Bank credit card and Bank One money card a few inches from appellant's feet.
 {¶ 13} At the close of the State's case, appellant moved for acquittal, pursuant to Crim. R. 29. In support of his motion, appellant argued that money cards do not fall within the purview of the definition of credit cards and that no evidence was presented that he actively participated in the theft. Appellant's motion was overruled and the defense presented its case-in-chief.
 {¶ 14} Appellant attested that, on the evening in question, he was "hanging out" at the Hershey House. At approximately 10:00 p.m., he began walking down Mentor Avenue, in the direction of Dairy Mart. He encountered Reed, a tall white male, and an unidentified black male. The three men decided to obtain some alcohol, and, to this end, John entered a Convenient Store and purchased several bottles of Mad Dog 20/20.
 {¶ 15} Appellant stated that the three of them walked along the train tracks, consuming the Mad Dog 20/20. When the trio came upon Fluid Regulators, appellant attested that Reed commented that he was going to break into the cars in the parking lot. Appellant attested that he told Reed that he would not participate and continued walking.
 {¶ 16} A few minutes later, the two men caught up with appellant, who was still walking in the construction area of Fluid Regulators. Appellant attested that the two men had a case of beer and a purse, which the two men quickly went through and then discarded. The three of them continued walking together.
 {¶ 17} One of the men observed that a police car was approaching and alerted the others. The men fled into the woods and continued drinking. After a short while, the police arrived and told the men not to move. Appellant averred that he did not move; however, the other men fled. After the others were apprehended, Officer Cueni returned and confronted him. Appellant denied knowing or having reasonable cause to believe that Ms. Kay's credit card and/or money card were obtained by theft and did not know that the two cards were at his feet.
 {¶ 18} At the close of the trial, appellant moved for acquittal pursuant to Crim. R. 29. His motion was overruled.
 {¶ 19} The jury returned a verdict of guilty on both counts. Subsequently, appellant was sentenced to serve ninety days in the Lake County Jail. From this judgment, appellant raises the following assignments of error:
 {¶ 20} "[1.] The trial court erred to the prejudice of the defendant-appellant in denying the motion for acquittal made pursuant to Crim.R. 29(A).
 {¶ 21} "[2.] The defendant-appellant's constitutional rights to due process under the sixth and fourteenth amendments to the United States Constitution were prejudiced by the ineffective assistance of counsel.
 {¶ 22} "[3.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence.
 {¶ 23} In appellant's first assignment of error, he argues that the State failed to prove beyond a reasonable doubt that appellant received, retained, or disposed of Ms. Kay's credit card and/or money card. Appellant argues that because none of the witnesses stated that they actually observed appellant in possession of Ms. Kay's property or that they heard the three men discussing her property, the State failed to meet its burden. Further, appellant asserts that a money card does not fall within the purview of the definition of credit card set forth in R.C. 2913.71.
 {¶ 24} A Crim.R. 29 motion for acquittal challenges the sufficiency of the evidence presented at trial. State v. Talley (Sept. 25, 1998), 11th Dist. No. 97-L-169, 1998 Ohio App. LEXIS 4526. When reviewing the sufficiency of the evidence to support a criminal conviction, the "relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 25} The elements of the offense of receiving stolen property are set forth in R.C. 2913.51, which provides that "[n]o person shall, receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."
 {¶ 26} In the instant case, the record reveals that three men, one of whom was later identified as appellant, were seen running from the Fluid Regulators parking lot onto Ms. Mapes' property, on the evening of December 15, 1999. The three individuals ran into the woods where they were seen drinking Miller Gold beer, the type of beer stolen from Ms. Kay. After apprehending the men, the police discovered that one of appellant's companions was in possession of fifty-five dollars and one of Ms. Kay's withdrawal receipts and that two of Ms. Kay's credit cards were found in a jacket discarded by his companion. Appellant, who had moved approximately fifteen feet from where Officer Cueni first observed him, had Ms. Kay's bankcard and a third credit card at his feet. Although none of the witnesses attested that they observed appellant in possession of Ms. Kay's property or heard the men discussing the property, the foregoing evidence established that appellant violated R.C. 2913.51(A). Ms. Kay's property was found in an area within appellant's immediate control. Thus, viewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 {¶ 27} Next, we will briefly address appellant's argument that money cards do not fall within the purview of type of property which enhances a receiving stolen property offense from a misdemeanor to a felony under R.C. 2913.71.
 {¶ 28} R.C. 2913.71 provides:
 {¶ 29} "Regardless of the value of the property involved and regardless of whether the offender previously has been convicted of a theft offense, a violation of section 2913.02 or 2913.51 of the Revised Code is a felony of the fifth degree if the property involved is any of the following:
(A) A credit card;
 {¶ 30} ***. "
 {¶ 31} A "`[c]redit card' includes, but is not limited to, a card, code, device, or other means of access to a customer's account for the purpose of obtaining money, property, labor, or services on credit, or for initiating an electronic fund transfer at a point-of-sale terminal, an automated teller machine, or a cash dispensing machine." R.C. 2913.01(U).
 {¶ 32} Money cards are a "means of access to a customer's account" for the purpose of "initiating an electronic fund transfer at a point-of-sale terminal, an automated teller machine, or a cash dispensing machine." Therefore, money cards fall within the definition of credit card set forth in R.C. 2913.01(U). Further, like credit cards, money cards can be used to obtain hundreds of thousands of dollars in cash or merchandise. Although money cards have per diem limits with respect to the amount of cash that may be withdrawn, there is no such limitation upon how much merchandise an individual may obtain. Due to the lag time between the actual transaction and the bank's accounting, money cards can be used to withdraw funds in excess of the amount contained in an individual's bank account.
 {¶ 33} Further, in State of Ohio v. Hendking (1993),91 Ohio App.3d 137, the appellate court held that a closed or expired credit card fits within the statutory definition. Hendking, at 140. The court explained that a credit card account need not be open because an expired or canceled credit card may still be a means to access a customer's account if used at a store which "utilizes paper authorization books published monthly, rather than an electronic authorization machine." Id. at 140. Many money cards are now embossed with credit card logos and, thus, are used as credit cards. Therefore, an expired or closed money card containing a credit card logo could also be used at a store that "utilizes paper authorization books published monthly." In light of the foregoing, we cannot conclude that the trial court erred in finding money cards fall within the purview of the statutory definition of credit cards. Appellant's first assignment of error lacks merit.
 {¶ 34} In his second assignment of error, appellant contends that his trial court counsel's failure to request a limiting instruction restricting consideration of John Reed's prior inconsistent statements to credibility, rather than substantive evidence, constituted ineffective assistance of counsel.
 {¶ 35} A licensed attorney is presumed to have rendered effective assistance in representing a criminal defendant; thus, appellant bears the burden of proving ineffective assistance. State v. Kerns (July 14, 2000), 11th Dist. No. 99-T-0106, 2000 Ohio App. LEXIS 3202, at * 7. "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus, citing Strickland v. Washington (1984),466 U.S. 668. "[T]o show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Bradley, supra, at 143.
 {¶ 36} Regardless of whether a limiting instruction was required, we cannot conclude that appellant has proven that there exists a reasonable probability that, but for counsel's alleged error, the result of the trial would have been different. Although Reed acknowledged making prior statements indicating that appellant had possession of the purse, in his trial testimony he stated that he did not remember which of the men had it. Because of the inconsistency of Reed's testimony, a rational trier of fact would find that his testimony lacked credibility.
 {¶ 37} Further, the evidence, including appellant's own testimony, demonstrates that appellant and two other individuals ran from the Fluid Regulators parking lot after one of them had removed a purse and a case of beer from an unlocked parked car. The three men fled into the woods upon learning that a police vehicle was approaching and proceeded to drink the same type of beer that was stolen from Ms. Kay. Each man was found with Ms. Kay's property either on his person, in his discarded clothing, or in the area within his immediate control. In light of the foregoing evidence, we cannot conclude that appellant has proven that there exists a reasonable probability that, were it not for counsel's alleged errors, the result of the trial would have been different. Thus, appellant's second assignment of error is without merit.
 {¶ 38} In his third assignment of error, appellant argues that the verdict is against the manifest weight of the evidence. The crux of appellant's assertion, however, is that the record is devoid of any evidence demonstrating that he participated in the theft or had Ms. Kay's property on his person. Therefore, appellant's argument appears to be a hybrid one.
 {¶ 39} Appellant's assertion that the state failed to prove he participated in the theft or was in possession of any of the stolen property attacks the sufficiency of the evidence. Since this court examined the sufficiency of the evidence in our disposition of appellant's first assignment of error, we will limit our analysis here to the issue of whether the verdict is against the manifest weight of the evidence.
 {¶ 40} An appellate court, reviewing a claim that the verdict is against the manifest weight of the evidence, must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. State v.Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 41} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony." Id. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id., citing State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 42} Appellant was convicted of two counts of receiving stolen property, in violation of R.C. 2913.51, which states that "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."
"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 43} The record in this case demonstrates that appellant and two other individuals were walking and drinking together on December 15, 1999. One of the individuals removed a case of beer and a purse from an unlocked car, located in the Fluid Regulators parking lot. The three men were observed together in the vicinity of the theft, immediately after the theft. The three men were observed drinking the same type of beer that was stolen. Officer Cueni attested that after appellant's companions were apprehended, he returned to where he had told appellant to stay, and found that appellant had moved approximately fifteen feet. The officer found Ms. Kay's credit card and money card inches from appellant's feet. While the cards were not on appellant's person they certainly were in an area within his immediate control and were found, along with appellant, fifteen feet from were the three men were observed drinking. Thus, despite appellant's assertion that he did not participate in the theft or receive any of the contents of the purse, the record contains evidence demonstrating each of the elements set forth in the statute.
 {¶ 44} In light of the foregoing, we cannot conclude that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. Appellant's third assignment of error is without merit and the judgment of the Lake County Court of Common Pleas is affirmed.
Judgment affirmed.
DONALD R. FORD and JUDITH A. CHRISTLEY, JJ., concur.